Good morning, Your Honor. Good morning. I'm Eugene Wong, Fodor's appellant. I first have to apologize that while I was the attorney on the trial level, I was not the attorney who completed the brief. Mr. Bob Ryan, who did it, is in a minor surgery recovering as of yesterday. And I also have to update this Court on certain factual changes since the time he has appeared in court. Mr. Chin is still in America. The two children are still in America. He and his wife were divorced as of January of 2007, but I don't see how that would affect the findings of this Court. However, he and his wife are still living together, and they're talking about reconciliation. Okay. The issue before this Court is whether a reasonable immigration judge would have denied asylum based on the compelling substantial evidence in support of Mr. Chin's claim for asylum based on a one-child-per-family law under the Refugee Act. He is now 29 years old. The two children are now, let's see, one is born in 2002. The other one is born in 2000. They're separated by two and a half years, both born in America. Both were conceived out of wedlock. It was clear the first child was conceived out of wedlock because the first child was born before marriage. The second child was born about four or five months after marriage, so it's most likely that the second child is conceived out of wedlock. And that is of significance under the Chinese family control policies. The Act's Section 101A.42b allows for a person to be granted asylum if he has a well-founded fear of being forced to undergo involuntary sterilization or subject to persecution for failure to refuse to do so. Do we know what part of China they're going back to? I gather that a lot of this is regional. I mean, how the policy is actually enforced is regional. Right. What region are they either from or going to? Mr. Chen is from the area of Fujian, and actually the country profile of 1998 made reference to Fujian and the neighboring Jijian province. In Fujian, they actually have a policy of allowing for a second child if the first child was born female. Both Mr. Chen's children are born male. Furthermore, in the country profile, they specifically stated that certain country officials who are less educated have been known to force sterilization on people who violate these policies. So what we have is before this Court has already a history of looking into a person's fear of the one-child-per-family policies and has already ruled that such fear is substantial for purpose of asylum considerations. Don't the country reports support the decision here? The country report, Your Honor, it taken in totality does not support the immigration judge's consideration. As a matter of fact, in our briefs, we suggest that that immigration judge took certain conclusions from the country profile out of context. But these are the considerations that if I may refer to the administrative record, there are several considerations that this Court probably has already been aware of that I'd like to. This case is very unusual because the children were born here and there was no past persecution at all. Yes. So you have to substantiate the well-founded fear without any presumptions or anything, just on the basis of you essentially have to demonstrate that there is more than a 10 percent chance that if they go back to China, they will be forcibly sterilized. I mean, I gather that you're not claiming that any fines that would be imposed would be persecution. Are you or are you? On administrative record, page 209, it refers to what Your Honor is talking about. There are circumstances where children born in America, two or more born in America, would not be persecuted. However, that's only limited to where the parents have legal permanent residence. Neither Mr. Chen nor his now-divorced wife are even legal in America. And so taken in context, taken in totality, we believe we have met the 10 percent chance. I'm trying to be a little more specific about something. Suppose they were — what is exactly your claim about what would be persecution? Suppose they were to go back, and as I understand it, some of what happens here is either they have to pay more for the kid to go to school or they have to pay a fine or something like that. Would that be persecution? Yes. Furthermore, there is more than 10 percent — There is a substantiation for that, that paying a fine as opposed to some sort of coercive sterilization or abortion or something. What we're saying is paying a fine or in addition or in the alternative for coercion, and one doesn't know exactly what may happen to the applicant. I understand, but what I'm trying — I'm just trying to analyze this. I'm trying to find out is if the great likelihood is that the 90 percent likelihood, 95 percent likelihood, is that the worst thing that would happen to them is they'd have to pay a fine, would that be persecution? It would be — That alone. That alone, Your Honor, should still be considered persecution. And what is the authority for that is what I'm trying to find out. Well, I don't have specific authority so much as if you don't have enough to live on, that is persecution. I'm sorry? If one does not — if the fine is such a hefty fine where it is known in the country report to be 20 percent to 50 percent annual income and continuing persecutions in the sense that the child who has to enter the school would continue to pay a much heftier tuition and the refusal of the government to grant them a proper place to live, it would be a smaller place, and if they have to pay a rent, it would be a substantially higher rent, these things taken in totality is a persecution, Your Honor. Okay. So essentially, you're arguing that that's persecution, so you don't really have to demonstrate that there's much of a likelihood that they're going to be forcibly sterilized or forced to have an abortion on that theory. Well, the problem is when a person is here, they're going into a black box over there. It may be those things that we just talked about, but it also may be that person is subject to vasectomy. In the country report in 1990 alone, 3 million vasectomies were performed, and I'm sure some of these vasectomies were not voluntary. So if you multiply that until the time it has occurred now, if you subtract the fact that probably they don't vasectomize young men, say, before 21, or old men after 65, a good percentage of the Chinese population have gone through vasectomies. Probably a good percentage of the American population, too. Well, America's most likely voluntary on it. Furthermore- Let me ask you. Are those vasectomies irreversible? Is that- Although my dad was a doctor, Your Honor, I can't tell- There's a means now where it can be reversible. I'm just wondering. I'm afraid I cannot answer that, Your Honor. But I can tell you this. In the country report, they also mention that there are 83 informants in China to over 1 million different centers of offering this information. If you, again, multiply that out, it comes to about somewhere between one informant to every 15 or 16 people in the population. They also say that the average children per woman at this point is about two, so obviously the one-child policy isn't working very well. Again, some of the explanation comes to the fact that if the first child was female, that explains it. Another situation could be in other circumstances. Anyway, in terms of the case law, I mean, are there cases that are close to this one, that is, A, the children were born here and there was no- and because the children were born here, there was no past persecution or coercion of any kind? The closest set of facts we have found is in Ashcroft v. Guo or Guo v. Ashcroft, the Third Circuit case, where both children were born in America, where both children were less than the age spread of four years. Again, four years is significant because apparently they allow a second child if the age spread is more than four years. I've actually personally seen a little card where they say five years. But here we have a situation where just like Guo, both children were born in America. Both children are separated by only two-and-a-half years and not four or five. And therefore, these – oh, but more significant, both children were conceived out of wedlock. But isn't it true that all that happened, Guo, was that they reopened the case, there was really no determination in the end? You're correct, Your Honor. They ruled on the prima facie issue of Guo. But nevertheless, that says it opens the door for such considerations. Otherwise, it wouldn't have met that prima facie evidence test. You're over your time. We'll give you a few moments to respond and rebuttal if you wish. Thank you, Your Honor. We'll hear from the Attorney General at this time. Welcome back. Thank you, Your Honor. On behalf of the United States Attorney General. The record here simply does not compel a finding that Petitioner established a well-founded fear of persecution in China or that he was otherwise eligible for the relief that was requested. If we take a look at the record, consider that in 1994, he was an unmarried 17-year-old who submitted an asylum application based on a claim that he had no future because his father was – first of all, he didn't have the circumstances that gave rise to this claim. And also, the claim didn't exist at the time. Your Honor, yes. But the facts should be considered because then after over four and a half years, he changes his claim. And that's a circumstances change. Yes, Your Honor. But he never revised his application even though he indicated that he would amend it. So his application is still based on old information, and he effectively abandoned that claim. What he did do is then – You think there's a procedural problem because he had to file a separate application? Your Honor, if anything, that would be one underlying basis. But really the emphasis here is the fact that he did not satisfy his burden of proof. Your Honor asked earlier about case law that was analogous. Well, the Second Circuit in Wang v. the United States, which was cited in Matter CC, which Petitioner had provided in his 28-J letter, that case involved a situation where the Petitioner had two United States citizen-born children and that they were claiming that if they returned to China, they would have a wealth and a fear of persecution. Well, the Second Circuit established there that based on the country materials, there was not sufficient information to substantiate their claim. Was that the same country information? Your Honor, I believe that was based on – it might have been based on more recent information. I'm not quite certain. I can't recall. But I do know that even in referring to Matter CC, the Board had referenced more recent country information in 2005, which was only a few years after the 2002 State Department report here and the 1998 State Department profile. And in that case, Matter CC, the Board stated that the 2005 profile states that it is now national policy that no action will be taken against students where both parents resided overseas for at least a year and have two children when they return to China. Furthermore, children living permanently overseas are not counted for birth planning purposes when their parents return to China. So the information that was cited by the immigration judge in this case, as well as the more recent information referenced by the Board in Matter CC, does not really substantiate the agency's decision here. Moreover, when asked what his understanding was regarding the Chinese laws pertaining to U.S. citizen-born children with parents who are from China and plan to return, Petitioner stated at 105 that based on information he obtained from his parents, he believed that his children would not be allowed to go to school. But if we take a look at the country materials, including at page 220, it indicates that children are allowed to attend school. It's just a matter of the parents having to pay social fees. And the reports here indicate that at most of them, there may be some fees that Petitioner would have to be forced to pay. In any event, the information substantiates the decision by the agency. There's nothing here that would compel a contrary finding. And when we consider that asylum is an extraordinary form of relief and that the evidence must compel a finding that the immigration judge got it wrong, that the no reasonable fact finder could find Petitioner ineligible, well, that isn't found here. And based on that, the petition should be denied. Do you read up on general statistics involving removal? Your Honor, in terms of in the context of certain forms of relief? Well, I don't even know the answer to this question. Do you know at the end of the day when a court of appeals has approved removal, denied review, what percentage of those that are the courts have said, okay, government, you can remove these people. You don't know what percentage are actually removed? Your Honor, I do have some information pertaining to asylum. I don't have information in the context of all removal proceedings. What is it for asylum? Your Honor, if Your Honor would bear one moment. Well, isn't it about 15 percent? Your Honor, first of all, it depends upon the context. When the alien first applies for an affirmative application for asylum, about one-third of it is approved by the Department of Homeland Security. Actually, Judge Hawkins is actually asking the opposite question. In other words, I understand him to be asking not how often is asylum approved, but when asylum is disapproved, ultimately, through the agency and through this court, how many people actually are ever removed? Is that what you're asking? Yes. Oh, I'm sorry, Your Honor. Thank you, Judge Berzon. I am not aware of that, but I know that based on the general statistics, that the majority are not removed simply because of those that are granted asylum. Those that are not granted asylum. Not granted asylum. Then even with those numbers, then unfortunately, the execution of it, it depends upon the country. That's precisely why I asked the question. Isn't it true that one of the reasons that percentage is very low is because countries like China won't take these people back? Yes, Your Honor. So are we engaged in a Sisyphean task aimed at a Pyrrhic victory here, or what? Your Honor, this is a challenge that is presented by the government that the government is seeking to address and that Congress is entertaining at this point. But it is not a matter that is before this court regarding this matter. What is before the court is whether the evidence compels a fine that is contrary to the denial of the applications for relief and protection. And the answer is that the evidence does not, so the petition should be denied. Thank you for your argument. Thank you, Your Honor. I'll give you a few seconds for rebuttal, Mr. Wong. I'll be very quick, Your Honor. The ultimate issue is have we met the 10 percent chance issue when taken in totality, the fact that the children are both male, they were both conceived out of wedlock, the fact that they are separated by less than four years, the fact that we can distinguish Is there any reason to believe, excuse me, even though it's sort of you can understand why the Chinese government would have an interest even in returning children if there were two of them because they're going to have to be raised and take resources and become members of the country, why would the Chinese government have any interest in whether they were conceived before or after wedlock when they weren't conceived in China? I don't understand the logic behind why they make that distinction, but it's clearly in the country reports. As to returning children as opposed to as to local children? They don't Obviously, it's a deterrent issue as to children who are there, people who are living there, but if they're not living there It is entirely possible that they can apply to U.S.-born children because in the country profile they made the distinction that if the parents were U.S. legal permanent residents, they leave them alone. Then the conspicuous converse is that they may not leave them alone. They're treating them as if they're Chinese residents if they're not legal. Right. And so a matter of CC is distinguishable because the two children are separated by more than six years. Because why, I'm sorry? The two children born in a matter of CC are separated by more than six years. So that's entirely distinguishable. Is that the basis for the decision? I can't tell just quite what it is, but It's a fact of the case. It's a fact of the case, yes. Okay. Thank you, ma'am. Thank you both for your arguments. Thanks for coming in today. The case just argued will be submitted for decision.
judges: B. Fletcher, Berzon, Trager